Let me first say that we are honored to have with us on the quorum today Judge Lewis Pollack of the Eastern District of Pennsylvania. We can only get our work done with the help of, I'm of the age when, I used to be, with the help of our friends, I think that was a Beatles song, let's play it, and the Eastern District of Pennsylvania has been particularly helpful to us and in particular my special delight, Judge Lewis Pollack of the Eastern District, so he's sitting with us as a Court Judge Manasseh and I are grateful to him, as is the entire Third Circuit. Okay, we'll hear counsel in Santomenno versus John Hancock. May it please the Court, I'm Nathaniel Spiller and I'm here representing the Secretary of Labor. Are you sharing time? Yes, we're sharing 15 minutes and I'm taking 5 minutes to address the ERISA issue and private counsel will address both the ERISA and the ICA issues and he's reserving the rebuttal time. Okay, thank you. Okay, the ERISA issue in this case is whether a participant must first request from a trustee or trustees of a plan, request that they sue a fiduciary before the participant themselves can exercise their independent statutory right to bring an action against fiduciaries for breaches that cause harm to a plan. And the main point I wish to make this morning is that that question is answerable but under ordinary principles of statutory construction. I will also address if I... You mean not the trust, not the business going back to trust law? Correct. The answer appears from ordinary reading of the statute. The statute itself gives participants the right to bring suit. It says a civil action may be brought by a participant for appropriate relief under Section 1109 of the Act. 1109 being the section that deals with fiduciary liability. And it's very... There are no preconditions that are placed on that statutory right. And doing what Justice Scalia says, you have to look at the words of the statute. Correct. You look at the words of the statute and the phrase may be brought by a participant. There is no ambiguity. There's no gap. There's no interstices that would permit a court to create or import federal common law. We would argue that... Another thing that Justice Scalia was moaned to say is that one shouldn't look at legislative history. I don't... There seems to be very little legislative history with respect to the abandonment of standard trust law doctrine. Is that not the case? I'm a little surprised that a major statute like this doesn't come enveloped with more than... I appreciate you quoted, and I think in your brief, some sort of languid language from the... There is general language in the legislative history that speaks to the purposes of the Act, one of which is to give participants ready access to the courts. Would you characterize it as languid as Judge Pollack did? Excuse me? I said Judge Pollack characterized it as languid language. Oh, languid language? I'm only speaking for myself, not for the whole panel. That's true. The legislative history is supportive, but that's not what we're primarily relying on. We're relying on the words of the statute. The statute, in general, imposes no requirements on participants and imposes no preconditions on their right to bring suit. The only limitation on the right to bring suit is the statute of limitations. And beyond that, participants have to meet general pleading standards. Is it clear in this case that John Hancock is a fiduciary? It's clear that the participants allege that John Hancock is a fiduciary. That will be one of the main issues on the merits that needs to be decided upon remand. And their case really... There is a part of the case, I think, does depend on there being a fiduciary. But the issue here is sort of precedent to that question. The issue here is whether there's a pre-litigation demand requirement that's placed on participants. And as I said, nowhere in the statute... You can read the statute as many times as you want and you will not find such a requirement or anything that comes close to suggesting that there is such a requirement. So simply as a matter of statutory construction, I think the answer in front of this court is unlike most ERISA cases that come before this court, there actually is a clear answer. The answer is no, there is no such requirement. You think that most cases that come before this court under ERISA don't have a clear answer? Yes. That was facetious. Most cases that come before this court have raised difficult questions of fiduciary duty or the scope of remedies, and those are areas in which trust law does inform ERISA and provides the background for ERISA. But on the question of who has the right to bring a cause of action and the nature of that cause of action, trust law does not speak to that question and there's no need to look to trust law to answer that question. The defendants... You're close to, I mean, your time, your red light is on. If you still have a minute or so.  Thank you. Thank you. Thank you. May it please the Court, my name is Arnold Blakind. I am here on behalf of Plaintiff Appellant Danielle Santomeno and Karen and Barbara Poley and I would like to reserve one minute if I might. No, you can't reserve one minute because by the time you get up, one minute is done and I recognize that, so take at least two minutes. Thank you, Your Honor. All right. Thank you. Just very briefly to elaborate on the ERISA argument, and then I'd like to turn to the ICA Section 36B and 47D arguments. Even were the Court inclined to depart from Judge Scalia's admonition that a Court should be loath to import requirements into a statute where Congress has not done so, the fact remains that as a matter of common law, suits against fiduciaries under both Boger and Restatement of Second of Trust, Sections 199 and 200, do not require pre-suit notice. A participant has an independent right to sue a fiduciary. So even were the Court to depart from Justice Scalia's admonition, trust law to the extent it's applicable would, in fact, excuse any pre-suit demand on a fiduciary. We have pled that John Hancock is a fiduciary, and while that issue is not before the Court, we think there are substantial arguments to support that. If I might. Who would be the beneficiary of a successful recovery in this case? The beneficiary of the successful recovery would be the plans themselves. But they're no longer in the plan, are they? They are not, but there are a number of cases. As a result of. I'm sorry, Your Honor. As a result of the employer's action. Exactly. As a result of the employer's actions, they're not. And they could have been dismissed from the plan had there been a change in the funds available. But this Court's decision in Grade and the decision of almost every other court has permitted employees who are no longer plan participants to enjoy the benefits of plan recoveries. So while they are not, and I get to that a bit in the ICA 36B point, while they are not in the plan, they would still have the benefit of any recovery. And I would respectfully submit that the fiduciary obligations of those that administer the plan would be to recognize that if a prior participant has suffered a loss, that participant should receive recompense. The ICA 36B point asks the question of whether or not there is a continuous ownership requirement in order to maintain an ICA 36B claim. We respectfully submit there is not for four reasons. Number one, that requirement is nowhere in the text of 36B. Number two, that requirement would undermine the policies which animate the Investment Company Act. Number three, it's inconsistent with the conceptual basis of the continuous ownership requirement. And number four, it would introduce anomalous results into the litigation of 36B cases. The Supreme Court in Gallist v. Mendel, a distinguishable case but that did involve the ownership requirement in a securities context, that case dealt with whether or not an investor in Viacom could continue a securities fraud case when Viacom merged with a parent and he only owned an interest in the parent. But the Court essentially set forth a four-part analysis of issues of this nature, focusing first on the text, second on the policy assessment, third on the legislative history, and if they're silent on the implications of either of two rules. In Gallist, the Court observed that the statute at issue there had no textual restriction on standing other than if the owner be an owner of security at the time the suit is filed. 36B has no restriction on standing. And as Justice Kerry. Excuse me, sir. Yes, Your Honor. The Pulleys were not owners at the time the suit was filed? They were not. All right. So what's your position with respect to their standing under ICE? As much as I'd like to say I think they have standing, it's a difficult argument for me to advance. I think only Ms. Santometto does. Okay. Thank you. Thank you, Your Honor. And as I cited earlier, the Supreme Court in JAMA said there should be a reluctance to impose a requirement when none is there. Second, the policy of the Investment Company Act has been stated in case after case, and that is to protect mutual fund investors. That policy would be frustrated by a rule that deprives prior injured owners of the right to sue. And in seven additional ways, the policies of the ICA would be frustrated. First, when Congress sought to incorporate a temporal requirement into a statute, it knew it had to do that. It incorporated it into the securities case.  Secondly, it certainly could have borrowed language from Federal Rule of Civil Procedure 23.1. The failure to do that indicates Congress did not wish to do that. Second, a plaintiff would have an obligation to mitigate damages. It would be highly inequitable to put a plaintiff in a position where they could not mitigate damages by selling their shares in a fund and had to remain in the fund continuing to sustain a potentially non-compensable loss. Third, if plaintiff is correct, and this action, of course, is derivative in nature, must be brought by on behalf of the fund, the fund is going to receive a recovery. And the question becomes, who does that recovery go to if prior owners have no opportunity to share in that recovery? Does it remain with the wrongdoer, or does it go to those who are present shareholders? That would be an inequitable result. They were shareholders at the time of the alleged wrongdoing. They were. They all were at the time of the wrongdoing. If the operative pleading in the case is your second amended complaint, wouldn't that also destroy standing on behalf of the second amendment? Yes, except that the case law that deals with that issue, I frankly did not read the cases the same way my adversary did, but if they are correct, that would preclude standing if you had to be an owner at the time. The second amended complaint. Correct, correct. Also, there's a difference in the conceptual basis of the continuous ownership cases in the corporate context, because when a corporation recovers money from a third party, that money can be used to pay employees, for reserves, to develop the corporation in the future. In the case of a mutual fund, all of that money is for the benefit of the mutual fund participants, either by increasing that asset value or by increasing dividends. So the mutual fund holder has an inevitable interest in that money, which is different than in the corporate setting. If I might, I think I'd better move on to my 47D argument. It's your time. Okay, thank you. The 47D argument addresses standing to advance a claim under Section 47B. I respectfully submit that four cases dictate the outcome of this case. In Transamerica v. Lewis, the Supreme Court construed Section 215 of the Investment Advisors Act and held that. I'm thinking that we're lucky that we no longer take what you say by stenographic, you know, by a person. I'm sorry. Because I don't know that somebody sitting there taking this could follow it as quickly as you're talking. I'm sorry. I was getting nervous because of the time. Don't worry about the time. All right, thank you. Let's worry about that. Thank you. Four cases dictate the resolution of the 47B point, and this will just take me two minutes. Go ahead. Thank you. Go ahead. We haven't stopped you. Thank you, Your Honor. In Transamerica v. Lewis, the Supreme Court was called upon to construe Section 215 of the Investment Advisors Act. That statute was substantially similar to 47B, which is before this Court. The Supreme Court in that 1979 decision held that Section 215 grants a right for specific and limited relief for a violation of the Investment Advisors Act. The application of that principle to this statute would afford standing to plaintiffs. In 1970, the Supreme Court also decided a case called Mills v. Electroautolite, a similar statute under the Securities and Exchange Act of 1934, Section 29B. The significance of that case is twofold. Number one, the Court there determined that a statute worded similarly to 47B afforded standing. But number two, at footnote 10 of the opinion, the Supreme Court equated Section 215 of the Investment Advisors Act, 47B of the Investment Company Act, and 29B of the Securities Exchange Act. So under Mills and Transamerica, the results should be the same. The next two cases to address this issue were Alexander v. Sandoval and this Court's decision in Wisniewski. Sandoval dealt with the Civil Rights Act, and the Court held that Section 602, which merely afforded the Department of Justice the ability to adopt regulations, did not extend standing to a suit for a violation, private standing for a suit of a violation of those regulations. What is significant about Sandoval, however, is that the Court described the judicial task as one to interpret the statute to determine whether or not it extends a private right of action, and cited Transamerica for that proposition. Transamerica, in fact, at page 246, articulates that very same test. So Alexander did not depart from Transamerica. In fact, it endorsed it. It held that Transamerica created rights-creating language as Section 601 did, which was not before the Court. The next case was this Court's decision in Wisniewski v. Rodale, which I submit is the analysis is extremely significant to the resolution of this matter. In Wisniewski, Section 3009B of the Postal Service Act allowed a mail recipient to keep an unsolicited gift. 3009C made it unlawful to send such a gift. This Court, when it held that there was not standing, went through the following analysis. It asked first, did Congress intend to create a private right? In Transamerica, the Court held that it did. Did Congress intend to create a private remedy? In Wisniewski, this Court held it did not because 3009 only permits FTC enforcement. That is not the case with 47B. It then turned this Court to a lengthy analysis of Transamerica, which demonstrates that that case retains vitality, certainly in this circuit and throughout the nation, and observed that it is different than this Section 215 differed from 3009C because 215 in the IAA afforded a limited remedy, 3009 did not, and 47B does. So if anything, 47B is a stronger argument. Well, doesn't the fact that Congress created a private cause of action in Section 36B of the ICA suggest that it did not intend to create a private cause of action in Section 47B? I think not, because then 47B would be rendered superfluous. There would be nobody. It would create a remedy but not a cause of action. It would, except for the fact that in Transamerica and Mills, the Court both found causes of action there. Secondly, the remedies available under other sections of the Investment Company Act have been more broadly construed than what 47B does. So if 47B was limited to providing, setting forth the scope of the remedies, then the other sections could not stand on their own by providing greater remedies. And one of the other things the Wisniewski Court did is it said you need to look, of course, at the legislative history on the standing issue. The legislative history of 47B reveals that in 1980 Congress amended that statute, and when they amended that statute, they said they did so to codify case law under analog laws and cited specifically the Transamerica case. So insofar as this Court's endeavor is to ascertain the intention of Congress, Congress answered that question in the legislative history. Finally, in the dissenting of the- You've just been told we're not supposed to look at legislative history, but leave that as a sign. The Wisniewski Court did have a section devoted to it. We can look just so long as we don't tell Justice Scalia. Your Honor, I think that concludes my argument, unless the Court has any other questions. No. Thank you very much. Thank you. May it please the Court. James Fleckner on behalf of Defendants John Hancock and its affiliates. First, let me respond to a few of the questions and comments made by the previous speakers. Which statute are you talking about? Okay. Thank you, Your Honor. I'm going to start with ERISA, and then I'll move to the 40 Act questions. Okay. Well, that's the one the government's concerned about. Okay. So, beginning with ERISA, the question was asked whether ERISA adopts trust law. This Court has held, in the Graydon case that we cite, that ERISA codifies a classic trust law process for recovering trust losses through a suit on behalf of the trust. And in the McMahon case, the Court similarly found, this Court similarly found, that trust law is incorporated into ERISA. Even the Supreme Court- In seven instances that we cite, you've looked at the words of the statute that don't contain a precondition on suit. And in seven instances that we cite, you found a precondition on suit. Not ERISA? Yes, in ERISA, Your Honor. The four are, and we cite these cases in our brief, Your Honor, at pages 19 to 20. Kilkenny, Harrow, Weldon, Wolf, I'm sorry, six cases, Pritzker, and Vigiano. In four of those instances, you've adopted, as 10 other circuits have done, a requirement of exhaustion of remedies, even though 502A1B of ERISA contains no such precondition. And in the other instances, you found a precondition where a trust agreement or collective bargaining agreement has required that either all trustees join the suit or that the suit be first sent to arbitration. So you've applied under the statute preconditions. And in this instance, the statutory language that we point to, in addition to trust law, the statutory language, Section 403 of ERISA, Section 405 of ERISA, Section 102 of ERISA, all show the unique role of trustees under the statutory structure, that trustees are at the heart of the statutory structure. Justice Thurgood Marshall said, over 25 years ago, in the central states case, 472 U.S. 559, that ERISA clearly assumes that trustees will act to ensure that a plan receives all funds, which it is entitled, so that those funds can be used on behalf of participants and beneficiaries. And I'll – Let me inquire. We've been helped this morning by Mr. Spillers giving us the view of the Department of Labor. Isn't that a view that we should take – pay some special attention to? Not in these circumstances, Your Honor. Their view is not espoused in a notice and comment regulation, so it's not entitled to Chevron deference. It is established in a less formal mechanism, so there's the question that can arise as to Skidmore deference. But in this instance, we don't believe Skidmore deference is warranted, because like other positions the Department of Labor has taken, such as in the Munch case that we cite, 1995 case of this panel, the Department doesn't take into account the balance that's required under ERISA of the statutory provision. So their statutory reading, we believe, is incorrect. We also believe that their opinion – Which department has supervision or control over ERISA? It's shared between the Department of Labor and the Treasury Department, although the Department of Labor is entitled to make regulations and issues advisory opinions. So that doesn't mean we should give it some – its position some special need? Well, under this Court's precedence, when the opinion is not persuasive, when it's not consistent with past decisions, when it's not subject to notice and comment rulemaking – Well, is there a past decision on precisely this issue? There isn't, but if you look – well, the Bickley case, I think, actually addresses this specifically and says that a participant cannot sue a service provider, even one who's alleged to be a fiduciary. I'm not aware of the Department of Labor submitting a brief in the Bickley case. We believe, Your Honor, that the Department of Labor, as we note in our brief, has said in the past that a plan asset includes a chosen action, a suit, and consistent with that view, trust law says even suits against fiduciaries – and we cite these cases at page 14 and 15, even under the common law of trust going back for centuries – a suit against a third party can't be brought without the trustee's involvement, and that's been interpreted in a number of courts that we cite as including suits against fiduciaries. So we believe – Did anybody testify during the hearings on this particular issue? We weren't able to find any on this particular issue. The legislative history does talk about the unique role that Congress wants for trustees, but this particular issue we did not see addressed. And I want to note that Mr. Lakin had suggested that these three plaintiffs are no longer planned participants. That's contrary to his pleading. The second amending complaint of paragraphs 51 and 52 indicate they're still participants, and, in fact, it's an important distinction because the plan, as far as we know from public filings, both plans still exist. They've simply terminated their contracts with John Hancock. So the plans no longer have a relationship with John Hancock, but there is still a plan, and there, as far as we know, although it's not in the pleadings and we have no relationship with the plan, there still may very well be trustees, and the trustees are required under 403A. They point in their briefing to the fact that there's an exception to 403A, 403B, but in this case it's undisputed that the contracts were issued to trustees. So even if the plan could have declined to have trustees and availed itself of that 403B exception, it didn't do so. Do you agree that the second amended complaint at least adequately alleges that John Hancock is a fiduciary? We've disputed that in the district court, and Judge Martini didn't rule on that alternative ground. We accept for purposes of this argument that John Hancock should be treated as a fiduciary, although we dispute it, but we think the trust law rule under the cases that we identify indicate that it extends to suits against fiduciaries. And I'll note in this regard, thinking about the 403B question, this court decided a case Wachtell v. Health Net in 2007, 482F3-225. And at page 234, the court said ERISA fiduciaries come in many shapes and sizes. Congress did not, I'm quoting, Congress did not intend to expand the full panoply of trustees' obligations to every entity that might be designated a fiduciary under ERISA simply because an insurer has certain fiduciary obligations under ERISA. Those obligations are not coextensive with the common law obligations of a trustee. And the common law obligations of the trustee are clear that they're required to investigate potential litigation. They're required to take action on behalf of the plan as a whole of all the participants' interests. There were services identified in this contract that we put in the, that we identify in our statement of facts, tax reporting services, plan administrative services, that individual participants might have no appreciation that they're receiving those services. And the trustee decided, which was his right, their rights, two different trustees of two different plans, their rights to allocate the cost for those services to the participants. So we think the rule, the longstanding common law trust rule protects participants, protects the plan, gives them the opportunity first to bring their complaint to the decision maker who hired John Hancock and since fired John Hancock. And if they're unsatisfied with their trustee's decision whether or not to sue, then they can go ahead and sue. That's what the trust law allows through the pre-suit demand. Mr. Fleckner, you wouldn't impose any obligation of a pre-suit demand on the Secretary of Labor, would you? I would not, no, Your Honor. No. Because under the common law. Aren't we construing words in the statutes that are exactly adjacent to each other? Do you want to add something to the second portion of this? Well, I don't want to add anything to the second part. But I think that the trust law requires that that be added, Your Honor, and that's the structure of it. I use bad words. No, not at all, Your Honor. But the statute distinguishes between participants, beneficiaries, fiduciaries, and the Secretary of Labor in the enforcement provisions. So simply asserting that a participant would need to make a pre-suit demand as it would under trust law, like the cases we cite about where the trust agreement says that all trustees have to join the suit. That wouldn't be applicable to the Secretary of Labor, but that's a decision that this Court has made that before a fiduciary may sue, if the trust agreement says all fiduciaries should join, that's a precondition. It's not a precondition that would apply to the Secretary of Labor, nor would this precondition apply to the Secretary of Labor, Your Honor. I would like to turn briefly to the Investment Company Act unless there's other questions under ERISA. With the Investment Company Act, Your Honors, the first thing I'll say is that Mr. Lakin discussed extensively statutory issues. Our argument is principally a constitutional standing argument under Section 36B that the plans that had interest in the John Hancock mutual funds have since terminated those interests. And under a long-standing constitutional… Why? We don't know why the trustees terminated. They had a better deal someplace else. They've gone to a competitor. John Hancock offers services and mutual funds, and a number of competitors of ours do in the marketplace, and trustees have a wide range of options. The letters we put in the record, Your Honors, right after the contracts and the joint appendix, they don't offer a rationale for the trustees' decision. But it was entirely the trustees' decision, and under long-standing constitutional laws applicable to derivative suits, once a plaintiff no longer has an interest in the entity on whose behalf she seeks to recover, then constitutionally, regardless of public policy concerns or statutory concerns, constitutionally, that person has no interest. And plaintiffs, or repellents rather, pointed in their reply brief for the first time to an analogy to ERISA law, and they point out that under certain types of ERISA plans, individual account plans, 401K plans, a participant may sue even after the participant no longer has an interest, once it's a cashed-out participant. Your Own Decision in Graydon, at footnote 6, explains that the ERISA analogy does not apply to shareholder litigation. And it explains that, unlike ERISA individual account plans, where the individual's interest is specified in the specific account that he or she owns, in a corporation, including a mutual fund, in the Stigall case that we cite, expands the analogy from a mutual fund to a corporation. In a corporation, a person has an undivided interest in the corporation's assets. And so once the corporation recovers, the individual has no particular interest except for the value of the shares. Interestingly, late last year after the briefing closed, the Securities and Exchange Commission instituted a cease and desist order with Morgan Stanley over 36B violations. And it didn't require Morgan Stanley to go find the former shareholders to pay the money back to. So we don't see the ERISA analogy as being apt, and we think that the constitutional principles certainly stand on their own, and through the cases that we've cited, provide no standing. Is there some way the funds can be required to trace the investments and get the money back? There's no automatic mechanism for that. Presumably the Securities and Exchange Commission could make certain requirements, but there's no obligation by operation of law that we're aware of, nor that appellants have cited that would require such individual tracing, nor would it be consistent with the structure of a mutual fund. In fact, it's the transfer agent of a mutual fund that actually distributes the shares. You take it as you buy it, in other words? You take it as you buy it. Just like any corporation, you may be a corporate shareholder, you may be dissatisfied with certain corporate management decisions, and you sell your shares and you buy a different company. Well, maybe someday those decisions that you didn't like back when you were a shareholder come to fruition. It's the new current shareholders who profit from that. The corporation doesn't have to go find you and give you money back once you've sold your shares, and that's precisely the analogy that the Stigall case that we cite references. With respect to the final issue under Section 47B of the Investment Company Act, Your Honors, I think the decision that we've cited, the Smith v. Oppenheimer decision from Judge Sand in the Southern District of New York, addresses many of the points that Mr. Lakin had raised. First, it distinguishes Transamerica, which is based on a different statutory structure. Not Mr. Lakin. What's that? Well, go ahead. Mr. Lakin talks about the Transamerica decision, which is based on a different statutory structure, the Investment Advisors Act. It doesn't have a private right of action. Footnote 5 of the Smith decision addresses the very Securities and Exchange Act that the Mills case relies on that he talks about, and it explains why, as Judge Ganaski pointed out, the 47B provision in the Investment Company Act is simply a remedy and not a private right of action. Unlike ERISA Section 502A2 that we were talking about, that explicitly states a participant may sue, Section 36B, which specifically states a security holder may sue, Section 47B has no such language. And, in fact, contrary to their briefing, where they say that 47B has the same or similar provision as the Investment Advisors Act and the Securities and Exchange Act, those two statutes use the word void, and in 1980 the Investment Company Act was explicitly revised to eliminate the word void that was found so important in those other statutes. So I see my time is up, but if there's any questions, Your Honors, I'd be happy to continue. Thank you very much. Thank you, Your Honors.  You only have two minutes. Thank you. And if you had just one minute, it would be even less. Thank you. First, with regard to the inquiry from the Court, is there a methodology to trace prior mutual fund holders? Number one, as a practical matter, there is. Everyone who has participated in a mutual fund gets statements, knows what those statements say. But the Court need not rely on that because the Code of Federal Regulations and other sections that deal with SEC settlements have requirements for the development of Fair Fund Distribution Plans, and almost every securities class action that involves a mutual fund has a Fair Fund Distribution Plan that protects both. What was the word before funds? Fair, F-A-I-R, fund. Oh, F-A, oh, fair. Fair. Fair Fund Distribution Plan that must be approved by a court in order to protect prior owners. Secondly, with regard to the viability of Transamerica. I have lots of mutual funds. With regard to the viability of Transamerica, this Court in Wisniewski made it eminently clear that the Transamerica analysis is, in fact, the correct analysis. And given the language in the 1988 amendments to the ICA, which specifically references Transamerica, it's awfully difficult to credibly argue that that should not be dispositive of the issue before the Court. Three circuits, or four circuits, have actually addressed the pre-suit demand. In Cone, Case, Brink, and one other, the Courts have held in the ERISA context there is no pre-suit demand in order to bring a suit for breach of fiduciary duty. So this Court would not be writing on a blank slate. The exhaustion cases are irrelevant because there is no exhaustion when one alleges a breach of fiduciary duty or a statute. Excuse me. If you are correct on the ERISA issue, are you asking for the same kind of damages under the ICA? Do these statutes help each other? Do they work separately? I mean, who wants damages? What you want is money. It all comes down, unless it's the Constitution, it all comes down to money. Right. And does one replace the other or does one supplant the other? I think plaintiffs would only be entitled to one recovery. So if they get an ERISA recovery, they wouldn't be entitled to anything under the ICA? Yes. And I think the difference is under ERISA, we have to prove fiduciary status as the Court observed. That's not a problem under the ICA. Under ERISA, we have a lower standard of proof with regard to whether the fees are excessive. Under the ICA, we have, frankly, a fairly high standard under Harris. 47B, I think, shifts, if we're correct, the standards and lowers it. But there are different elements and different standards of proof. I'm just thinking practically. We have to tell the district, assuming that we reach them, we have to tell the district court something. Is there any point to saying decide the ERISA issue first, separate the ICA? I mean, what do we do? I think the difficulty with that is because the fiduciary status assessment is so fact-intensive that if the Court did the ERISA issue not concurrently, it would lengthen this litigation quite a bit. Well, I don't know why. I mean, the question under ERISA is do you have to make a demand? They haven't made a demand. Right. So suppose we were to go back. Suppose. I mean, we haven't even talked. Right. Suppose we were to go back and say, okay, decide the ERISA issue first. It's just a matter of law to district court. And if the district court decides, yeah, they should have made a demand, then what happens? If we're relieved of any duty to give a pre-suit demand, I think the Court would then turn to the fiduciary assessment. And if we prevailed on that, I think it would be a relatively straightforward case to demonstrate the fees are excessive with a much more lenient standard than the ICA. So there is a benefit to proceeding in that fashion, as Your Honor suggests. I guess I was just throwing it out to find out what we do. I mean, you know, if you're a court of appeals, you have to think about what you write, what you do, what's the judgment. Right. And the question here is, what should our judgment be? Right. And it shouldn't take long to decide whether you have to make a demand or not. I mean, he has to. And if he's wrong, then it will go up anyway. I don't know if it's a final order. You understand Judge Slobodur, who indicated that in the district court, we don't have to write. Particularly. If you want to take that, then you can have that. Unless the court has any other questions. I do not. Thank you. I'm sorry I went over. That's okay. Thank you.